UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ANTHONY VIKEY OMAR PRICE,

                  Petitioner,

-vs-                                          Case No. 5:18-cv-23-Oc-02PRL
                                          Criminal Case: 5:14-cr-13-Oc-10PRL

UNITED STATES OF AMERICA,

                  Respondent.
_____/

**O R D E R**

Petitioner, through counsel, initiated this case by filing a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. (Doc. 1). Petitioner has also submitted a memorandum in support of the motion/petition and an affidavit. (Docs. 6, 11). The Government has filed a response to the motion (Doc. 10) and Petitioner has filed a reply to the response (Doc. 15).

The record conclusively shows that Petitioner is not entitled to relief. No evidentiary hearing is warranted. For the reasons stated in this order, the motion/petition under 28 U.S.C. § 2255 will be denied.

**I.**     **Procedural History**

In March 2014, Petitioner was indicted along with a co-defendant with aiding and abetting the attempt to possess with intent to distribute five kilograms or more of cocaine in

violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. A jury found Petitioner guilty as charged on July 23, 2014. (5:14-cr-13-10PRL, Doc. 66).

The maximum penalty Petitioner faced was a mandatory minimum sentence of 10 years to life imprisonment. The Government provides that Petitioner was eligible for a section 21 U.S.C. § 851 enhancement, but his mandatory minimum sentence was not increased. Accordingly, the mandatory minimum sentence remained at 10 years imprisonment. (Doc. 10).

At sentencing, the Court adopted the guidelines calculations in the Presentence Investigation Report and determined that the sentencing guideline range was 360 months to life imprisonment. (Cr. Doc. 129). Petitioner qualified as a career offender under section 4B1.1 because he had prior qualifying offenses. Id. Specifically, Petitioner was convicted of (1) sale of cocaine in Marion County, Florida, case no. 05-CF-1900 (felony), and (2) trafficking in cocaine 28 grams to 150 kilograms, in Marion County, Florida, case no. 06-CF-648 (felony). Id. There was no objection to the guidelines calculation and the Court adopted the facts concerning the prior convictions. Id.

Petitioner's counsel submitted a sentencing memorandum. (Cr. Doc. 111). Defense counsel argued that a sentence of 360 months was greater than necessary and unreasonable. Id. Counsel argued that a guidelines sentence would be unreasonable because it would "cause an unwarranted disparity among defendants with similar records and similar crimes,"

including a co-defendant. Id. Counsel requested that the Court sentence Petitioner to 210 months imprisonment. Id.

The Court sentenced him to 262 months imprisonment. (Cr. Doc. 113). The Court found that the sentence was "somewhat below the sentencing range" and would be "sufficient to accomplish the objectives of the statute, taking into account the seriousness of the offense of conviction, the prior record of the defendant, obviously, the necessity for promotion of respect for the law, and both general and specific deterrence, as well as incapacitation." (Cr. Doc. 129).

The Eleventh Circuit Court of Appeal affirmed Petitioner's conviction and sentence. (Cr. Doc. 154). Petitioner's judgment and conviction became final on January 9, 2017 when his petition for certiorari review was denied. The Government concedes that Petitioner timely filed his § 2255 motion. (Doc. 10).

## II. Discussion

In the motion/petition, Petitioner raises three grounds for relief challenging the career offender designation and arguing that his trial and appellate counsel provided ineffective assistance. (Doc. 1). Petitioner also states in his memorandum that he should not have been classified as a career offender because the fact of the prior conviction must be charged in the indictment and provided to a jury. (Doc. 6). Petitioner raises this argument as a challenge to Almendarez-Torres v. United States, 523 U.S. 224 (1998).

A. Ground One

Petitioner contends that his "former counsel was prejudicially ineffective in his inaccurate advice and lack of advice during the plea negotiation stage of the case." (Doc. 1). Petitioner provides that his trial counsel knew that he was guilty and "needed to plead guilty to cooperate." Id. Petitioner states that he failed to seek a plea deal with the Government; failed to advise Petitioner "about the option of entering an open plea, on the sentencing disparities between going to trial and pleading guilty"; and "failed to advise [Petitioner] to plead guilty to avoid a higher sentence from losing trial." Id. Petitioner asserts that the Government did not file a notice of enhancement under section 851, but his trial counsel incorrectly believed that the Government did so. Id. As such, Petitioner alleges that his counsel wrongly advised him that the mandatory minimum was 20 years. Id. Petitioner provides that he would have entered an "open plea of guilt if he would have known the correct mandatory minimum and been given advice about entering an open plea in order to avoid a higher sentence." Id.

Petitioner states in his memorandum that but for these errors "a reasonable chance exists that Price would have pleaded guilty, been granted a reduction for acceptance of responsibility, and received a lower sentence." (Doc. 6). Petitioner cites to the trial transcript and his affidavit in support of his claims. (Docs. 6, 11).

The standard for ineffective assistance of counsel claims in habeas proceedings is well established. To prevail, a habeas petitioner must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) prejudice resulted because there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. Hinton v. Alabama, 571 U.S. 263 (2014) (citing Strickland v. Washington, 466 U.S. 668 (1984)).

The Government concedes that an ineffective assistance of counsel argument is cognizable under 28 U.S.C. § 2255,[1] but argues that counsel's performance was not Constitutionally deficient and Petitioner did not suffer prejudice. The Court finds that Petitioner is not entitled to relief under Strickland.

As an initial matter, the Government represents to the Court that Petitioner was advised at the arraignment that he faced a 10 year mandatory minimum penalty on Count One, and that the Government/Court never advised him that the mandatory minimum was higher. (Doc. 10). However, a review of the criminal docket reflects that Petitioner waived his appearance at the arraignment, which the Court accepted. (Cr. Docs. 25, 26). Accordingly, it does not appear that Petitioner received notice of the correct mandatory minimum at that juncture in the case.

---

[1] Doc. 10 (citing Lynn v. United States, 365 F.3d 1225, 1234 n.17 (11th Cir. 2004)).

Regardless, the trial transcript supports the remainder of the Government's position. Specifically, during the trial and before the jury deliberations, Petitioner was advised that the correct mandatory minimum sentence was 10 years incarceration and was reminded that he may plead guilty. The Court and parties, including Petitioner, engaged in the following discussion which occurred outside of the presence of the jury:

> Mr. Duva: Your Honor, I would like to put one other thing on the record, if the Court would permit. I'm a little concerned about Mr. O'Brien standing up and saying that his client is facing 20 years to life. He's not. He's facing ten years to life. I want to make sure that's communicated.
>
> I know there's been a series of, you know, 2255-type arguments about exposure or offers. Of course, Mr. O'Brien's client never asked for a plea agreement. Mr. O'Brien never asked me for a plea agreement, so I never tendered one.
>
> But I want to make clear that all along that this defendant understood the exposure. I do believe he scores as a career offender. It is a ten-to-life range.
>
> The reason I'm asking that is, Mr. O'Brien, I'm aware, was in a recent 2255 hearing where he testified that he did not recall if he discussed plea offers with his client in that case, and I want to make this record crystal clear where we stand on that.
>
> The Court: Well, let's settle, first of all, the exposure in the case. But that would be with an enhancement, I take it, as a result of prior convictions. Have you filed an 851 –
>
> Mr. Duva: I did not, your Honor.
>
> The Court: In any event, the statutory range of punishment applicable to the case in the event of conviction, I take it, is a term of not less than ten years or any – and any other term up to life imprisonment?

Mr. Duva: Correct.

The Court: Do you agree with that, Mr. O'Brien?

Mr. O'Brien: Yes, I do, Judge.

The Court: Is that what's been communicated to Mr. Price?

Mr. O'Brien: I know that the Court is not to consider himself in plea negotiations, so I'll be careful about what I say.

The Court: Thank you.

Mr. O'Brien: But in order to adequately respond to the Court's question, I will tell you that Mr. Duva and I have had many conversations about Mr. Price and whether or not he should proceed to trial and what he would be facing based on certain deadlines. I misspoke earlier and said it was 20 to life, and that was because Mr. Duva and I had many conversations about the fact that – and I agreed; he qualified under 851 for an enhancement.

In terms of the additional conversations that we had, we both agreed that whether it was ten or 20 is likely to be moot issue because of the career offender guideline.

The Court: Well –

Mr. O'Brien: So –

The Court: – I think maybe we're going far beyond my question or anything we need to discuss here. The only issue at the moment is whether Mr. Price understands, and understood when he started this trial, that his sentence exposure was ten years to life.

Mr. O'Brien: Judge, I can answer that question and tell you "yes." Perhaps it's best at this point that you talk to Mr. Price.

The Court: May I have your permission to address the defendant personally –

Mr. O'Brien: Yes, Judge.

The Court: – and ask him that question?

Mr. O'Brien: I think that that's appropriate at this point.

The Court: Mr. Price, do you understand, as you sit there, that if you're found guilty by this jury, your sentence exposure is a term of commitment of not less than ten years and any other term of years up to life imprisonment? But the actual sentence to be imposed will be determined on a number of different factors following the preparation of a presentence report and the application of the United States Sentencing Guidelines to your case. You understand that?

The Defendant: Yes, sir.

The Court: And has that been your understanding all along, that you were looking at a possible ten-year mandatory minimum and up to life in prison?

The Defendant: No sir.

The Court: Well, what was your understanding?

The Defendant: That I was facing 20 years.

\*\*\*
[the jury reenters the courtroom, the judge excuses the jury for a recess and the jury exits]
\*\*\*
The Court: Be seated, please.

This is an interesting problem, and I think it may be somewhat insoluble at this point. Rule 11 prohibits the Court from being involved, as Mr. O'Brien has already pointed out, in any plea discussions or negotiations between the parties.

Coupled with that is the attorney/client privilege on the defense side, and any communications at this point between counsel and the defendant concerning

sentence exposure or any other matter having to do with the case would be absolutely privileged.

And I'm not entirely sure that it has much to do with anything at this point because, as I understood you, Mr. Duva, you said before that no plea negotiations were offered by the United States, no – no plea agreement or the like during the course of this case. Is that right?

Mr. Duva: Your Honor, it's not my practice to indict someone and tender a plea agreement without being asked for.

There was no plea agreement that was ever asked for. We never even got anywhere close to that.

Mr. O'Brien said, "I think this is a cooperation case. I think this is a cooperation case," you know, took meetings with him and his client.

And this course puts the government in sort of an untenable position because until a plea agreement is asked for, you can't send one. It is just was never asked for.

I do not – it is not my practice to draft plea agreements for absolutely no reason and then send them to defense counsel.

Mr. O'Brien was told that this was a ten-to-life case. We did have discussions about whether an 851 would be filed or not. It wasn't filed. There is no record in the court record that one was filed.

So I think it is solvable, the problem, to a point in that the record is clear that no plea agreement was asked for. The record is clear that thus no plea agreement was provided.

The Court: That's all I've –

Mr. Duva: And the record is clear that Mr. Price –

The Court: That's all I've asked and I think all we need to pursue at the moment. There's simply no issue before the Court for resolution on the matter at this time.

Mr. Duva: I think so, and I think – but I think the one thing that's important for now going forward, if – and I'm not presupposing a conviction. I don't know what the jury's going to do. I have no idea. But Mr. Price today clearly understands that he's facing ten to life. His options are, one, to plead straight up, which we know he's not going to do, or to submit the case to the jury tomorrow.

So I think we've sort of solved it in a way that Mr. Price does know the range. I think one thing that is not clear is he said "I'm facing 20 years." Well, does he believe he's facing 20 years because of the likely career offender guideline, which would put him in the 20-year time frame, or did he think all along it was a 20-year minimum mandatory?

Even it's one or the other, I don't think it really matters because I think the Court has made clear what he's facing today. And I think that, in essence, is as much as the problem could be solved to the extent that there is one.

The Court: I think that's what I said a few minutes ago.

Mr. Duva: I just wanted to make a record, Your Honor. That's all.

The Court: Well, there are difficulties in making a record, but one isn't record, Mr. Duva, because you may wish you had a different record later on in a different procedural climate. But, nevertheless, I do not see that it needs to be pursued.

If the defendant wishes to enter a plea of guilty, he always has a right to come forward and enter a plea, and I haven't heard any suggestion in that regard. And we'll simply proceed with this case.

Do you have any comment you wish to make about that, Mr. O'Brien?

Mr. O'Brien: No. Thank you, Judge.

(Cr. Doc. 132).

The Court finds that counsel's performance was not deficient. The transcript reflects that counsel advised Petitioner that his sentence exposure was 10 years. It seems that there might have been some discussion regarding the mandatory minimum versus the sentence Petitioner faced taking into consideration enhancements. In any event, the record shows that the Court gave Petitioner an opportunity to plead guilty after he had a clear understanding of the potential penalty.

Further, "a defendant has no right to be offered a plea." See Missouri v. Frye, 566 U.S. 134, 148 (2012); see also Fed. R. Crim. P. 11(c)(1) (stating "the government and the defendant's attorney. . . *may* discuss and reach a plea agreement.") (emphasis added). Because "there is no Constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." Weatherford v. Bursey, 429 U.S. 545, 561 (1977). As such, to the extent that Petitioner argues that his counsel was constitutionally ineffective for failing to negotiate a plea, the claim is without merit.

Moreover, taking into consideration the sentencing and trial transcripts, presentence investigation report and the sentencing guidelines, Petitioner has not established prejudice. Any deficiency in counsel's performance did not result in a reasonable probability that the proceeding would have been different under Strickland. And whether the minimum-

mandatory sentence was 10 years or 20, Petitioner resided squarely in the 20-year range due to his status as a career offender.

B.  Ground Two

Petitioner claims that he was "improperly sentenced as a career offender, as demonstrated by recent Supreme Court decisions; if this argument was previously available, trial and/or appellate counsel were prejudicially ineffective for failing to raise it before sentencing or on appeal." (Doc. 1). As discussed, Petitioner was designated as a career offender because he had two prior convictions for the sale of cocaine and trafficking of cocaine in violation of Fla. Stat. §§ 893.13 and 893.135. Petitioner argues that the sale of cocaine conviction is not a "controlled substance offense under Supreme Court precedent including Mathis, and the conviction for trafficking in cocaine is not a controlled substance offense under Supreme Court precedent including Shannon." Id.

The United States argues that this challenge is not properly before the Court under § 2255. (Doc. 10). The Court agrees. Although a prisoner "may challenge a sentencing error as a 'fundamental defect' on collateral review when he can prove that he is either actually innocent of his crime or that a prior conviction used to enhance his sentence has been vacated," a challenge to petitioner's status as a career offender under the Sentencing Guidelines is not cognizable in a § 2255 motion unless the sentence exceeds the statutory maximum. Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc).

Here, Petitioner's sentence did not exceed the statutory maximum; Petitioner does not claim to be factually innocent (in fact he states in the motion that his counsel "knew he was guilty"); and his prior convictions have not be vacated. Finally, "[a]ny miscalculation of the guideline range cannot be a complete miscarriage of justice because the guidelines are advisory." Id. at 1140.

Even so, the Court adds that with respect to Petitioner's § 893.13 offense, the Eleventh Circuit has found that it qualifies as a "controlled substance offense." United States v. Pridgeon, 853 F.3d 1192, 1198 (11th Cir. 2017). Petitioner recognizes that in 2014, the Eleventh Circuit determined that Fla. Stat. § 893.13(1)(a) is a "controlled substance offense" for purposes of U.S.S.G. § 4B1.2(b) and the career offender enhancement. (Doc. 6, citing United States v. Smith, 775 F.3d 1262 (11th Cir. 2014)). Petitioner argues, however, that the Smith decision predates Mathis v. United States, 136 S.Ct. 2243 (2016), and now it is an open question as to whether a drug sale under § 893.13 is a "controlled substance" offense. Id.

However, in United States v. Pridgeon, 853 F.3d 1192 (11th Cir. 2017), decided after Mathis, the Eleventh Circuit found that it was bound by Smith and the defendant's § 893.13 convictions qualified as predicate "controlled substance offenses" for purposes of the career offender enhancement. See also United States v. Jimerson, 749 F. App'x 950, 951 (11th Cir. 2019) (finding that "Smith squarely holds that his convictions under Fla. Stat. § 893.13(1)

qualify as controlled substance offenses under § 4B1.2(b)."). Accordingly, the sale of cocaine conviction qualifies as a "controlled substance offense."

The Court's use of the Florida trafficking conviction was also proper. Section 893.135 of the Florida Statutes provides that any person who knowingly sells, purchases, manufactures, delivers or brings into the state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine, but less than 150 kilograms of cocaine, commits a felony of the first degree, known as "trafficking in cocaine."

Petitioner relies on United States v. Shannon, 631 F.3d 1187 (11th Cir. 2011), to claim that the "record does not establish whether allowable documents establish that Price committed a controlled substance offense." (Doc. 6). Petitioner makes this distinction because under Shannon, a conviction for the purchase of drugs under the Florida statute is not a controlled substance offense. Id. at 1189-90. That is so because 4B1.2(b) does not include purchase of drugs as a controlled substance offense. Id. The Eleventh Circuit concluded that because the Florida statute "facially distinguishes purchase from actual or constructive possession," a district court cannot find that purchasing a distributable quantity of drugs necessarily gives rise to actual or constructive possession under 4B1.2(b). Id. Petitioner claims that "the record does not establish that [his] § 893.135 offense was a controlled substance offense . . . ." (Doc. 6).

The Court disagrees. The Florida drug trafficking statute "infers an intent to distribute once a defendant possesses a certain amount of drugs." United States v. James, 430 F.3d 1150 (11th Cir. 2005), overruled on other grounds by Johnson v. United States, 135 S. Ct. 2551 (2015). Here, the criminal record shows that Petitioner was convicted of drug trafficking in Florida in 2007. (Cr. Doc. 85). The presentence investigation report, which was adopted with no objection, states that a Marion County deputy attempted to conduct a traffic stop on a vehicle Petitioner was driving. Petitioner slowed the vehicle, jumped out and ran. Upon arrest, it was discovered in Petitioner's backpack contained 40.7 grams of powder cocaine, 7.5 grams of crack cocaine and 413 grams of marijuana. Id. Petitioner also had $1,400 and a knife in his pants pocket. Id. This quantity fits the amount required for trafficking in section 893.135, and drug trafficking falls within the definition of a controlled substance offense in section 4B1.2. Petitioner is not entitled to relief under Shannon.

Petitioner's trial and appellate counsel did not provide ineffective assistance by failing to raise the objection. The career offender designation was proper. Petitioner has not shown that his counsels' performances were deficient or that he was prejudiced by the conduct at issue in Ground Two.

C.  Ground Three

In Ground Three, Petitioner states that "Supreme Court case law demonstrates that [he] should not be classified as a career offender as the term 'controlled substance offense'

is standardless, invites arbitrary enforcement, and like the residual clause. Void for Vagueness: former counsel were ineffective." (Doc. 1).

The Supreme Court decision Petitioner refers to is Johnson v. United States, 135 S. Ct. 2551 (2015). Id. Petitioner argues that Johnson, which found the residual clause of the Armed Career Criminal Act to be unconstitutional, can be extended to the definition of "controlled substance offense" under the sentencing guidelines because the term is "void for vagueness."

The law does not support this argument. A "'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S. Sentencing Guidelines Manual § 4B1.2(b). The Supreme Court in Johnson did not discuss the meaning of "controlled substance offense" under the career offender provision of the sentencing guidelines. Moreover, the Supreme Court in Beckles v. United States, 137 S. Ct. 886, 894 (2017), concluded that the void-for-vagueness doctrine does not apply to the advisory sentencing guidelines.

The Court recognizes that there is an ineffective assistance of counsel component included within this claim. Petitioner states that "[e]ither the claims could not have been

raised earlier due to developing case law or Price's former trial and appellate counsel were ineffective." (Doc. 1). As stated in Ground Two, Petitioner's trial and appellate counsel did not provide ineffective assistance by failing to raise the objection at sentencing. The career offender designation was proper. Petitioner has not shown that his counsel's performances were deficient or that he was prejudiced by the conduct at issue in Ground Two.

D.  Apprendi Claim

While Petitioner did not include the claim in the Petition, he argues in the memorandum that he should not have been "classified as a career offender, as the fact of prior conviction, like any other fact that increases punishment, must be charged in the indictment and proved to a jury beyond a reasonable doubt or admitted by the defendant knowing it to be an element of the offense." (Doc. 6).

Contrary to this position, the Supreme Court in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (emphasis added), established, as a constitutional matter, that "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and provided beyond a reasonable doubt." The Eleventh Circuit has maintained that the Government need not allege in its indictment nor prove beyond a reasonable doubt that a defendant had prior convictions in order to use those convictions for purposes of enhancing a defendant's

sentence. See United States v. Camacho-Ibarquen, 404 F.3d 1283, 1290 (11th Cir. 2005) (citing Almendarez-Torres v. United States, 523 U.S. at 224).

Petitioner is apparently aware that the law does not support his argument and, therefore, he argues that Almendarez-Torres, 523 U.S. at 224, was wrongly decided and is inconsistent with the reasoning in Shepard v. United States, 544 U.S. 13 (2005).[2]

The Court is not inclined to accept Petitioner's invitation to disregard Almendarez-Torres. See United States v. Orduno-Mireles, 405 F.3d 960, 962-63 & n.3 (11th Cir. 2005) (reaffirming that Shepard does not alter the understanding that "because the prior-conviction exception remains undisturbed after Booker, a district court does not err by relying on prior convictions to enhance a defendant's sentence.").[3] Petitioner is not entitled to relief.

## III. Conclusion

Upon due consideration, the motion/petition under 28 U.S.C. § 2255 is **DENIED with prejudice** and the Clerk is directed to enter judgment to that effect and close the file.

A certificate of appealability and leave to appeal *in forma pauperis* are denied. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A [COA] may issue. . . only if the

---

[2] It might be that Petitioner abandoned this argument because he fails to discuss it in his Reply. (Doc. 15). In an abundance of caution, the Court will address it.

[3] See United States v. Harris, 741 F.3d 1245, 1250 (11th Cir. 2014) (finding that the circuit is bound by Almendarez-Torres unless the Supreme Court overrules the decision).

applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a showing, Petitioner "must demonstrate that reasonable jurists would find [the] district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 276 (2004), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** at Tampa, Florida, on March 4, 2019.

                                           s/*William F. Jung*
                                           **WILLIAM F. JUNG**
                                           **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record
Petitioner, *pro se*